IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Matthew Dustin Perry,                    )
                                         )
         Petitioner,                     )    Case No. 8:10-cv-2436-RBH-JDA
                                         )
         v.                              )    **REPORT AND RECOMMENDATION**
                                         )    **OF MAGISTRATE JUDGE**
Warden Lieber Correctional Institution,[1]  )
                                         )
         Respondent.                     )
_____)

         This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 14.] Petitioner is a state prisoner who seeks relief pursuant to Title 28, United States

Code, Section 2254.  Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to

review post-trial petitions for relief and submit findings and recommendations to the District

Court.

         Petitioner filed this Petition for writ of habeas corpus on September 17, 2010.[2] [Doc.

1.]  On December 16, 2010, Respondent moved for summary judgment.  [Doc. 14.]  On

January 16, 2011, Petitioner filed a response in opposition to Respondent's motion for

summary judgment.  [Doc. 20.]

         Having carefully considered the parties' submissions and the record in this case, the

Court recommends that Respondent's motion for summary judgment be granted and the

Petition be denied.

---

         [1] Respondent Warden Stan Burtt was terminated as a party on September 24, 2010, and Warden
Lieber Correctional Institution was added as a party.  [Doc. 8.]

         [2] A corrected Petition was added to Docket Entry 1 on October 18, 2010.

## BACKGROUND

In April 2001, Petitioner was indicted for murder, armed robbery, and conspiracy to commit murder and armed robbery.  [App. 591–96.][3]  In September 2001, Petitioner was also indicted on a kidnapping charge.  [App. 597–98.]  After a jury trial in March 2003, where Petitioner was represented by J. Kevin Holmes ("Holmes") [App. 1–590], Petitioner was convicted as charged [App. 564–65].  Petitioner received the following sentences for the charges, all sentences to run concurrently: a life sentence for murder, thirty years for armed robbery, thirty years for kidnapping, and five years for conspiracy to commit murder and armed robbery.  [App. 580.]

Petitioner filed a direct appeal of his conviction and sentences.  [*See* Doc. 15-6.]  Petitioner's appellate counsel filed a final *Anders* brief on November 16, 2004, along with a motion to be relieved as Petitioner's counsel.  [Doc. 15-6.]  The *Anders* brief addressed the following issue: "The judge erred by refusing to grant a mistrial after one of the jurors revealed that he had discussed with his fellow jurors the fact that he had attended a gun class taught by the victim."  [Doc. 15-6 at 4.]  The State submitted a letter in response in lieu of a formal brief.  [Doc. 15-7.]  Petitioner filed a pro se response to the *Anders* brief, which addressed the following issues:

> 1. Did trial judge err[] by refusing to grant a mistrial.
>
> 2. Did trial judge err[] by refusing to grant an acquittal.
>
> 3. Did Trial Court lack subject matter jurisdiction.
>
> 4. Did trial judge err[] by refusing to grant a Dismissal of Charges.

---

[3] The Appendix can be found at Docket Entries 15-1 through 15-5.

2

5. Did trial judge err by refusing to grant a directed verdict.

[Doc. 15-8 at 4.]  The South Carolina Court of Appeals dismissed the appeal on May 23, 2005.  [Doc. 15-9.]  Petitioner filed a pro se petition for rehearing [Doc. 15-10], which was denied on August 29, 2005 [Doc. 15-11].  The Court of Appeals issued remittitur on October 3, 2005.  [Doc. 15-12.]

Petitioner filed an application for post-conviction relief ("PCR") on April 14, 2006.  [App. 599–611.]  Petitioner's grounds for relief were ineffective assistance of counsel, abuse of discretion by the trial judge in denying a directed verdict on the kidnapping charge, and prosecutorial misconduct based on Petitioner's direct indictments.  [App. 607–08.]  As to his ineffective assistance claims, Petitioner alleged that his trial counsel provided ineffective assistance for the following reasons: (a) "not objecting to the burden shifting jury charge"; (b) "not making a motion to suppress, or objecting to the inadmissible videotape being used as evidence"; (c) "not making a motion to quash the jumbled murder indictment"; (d) "not making a motion to quash the two (2) direct indictments"; (e) "changing the wording of the petitioner's pro se motion to dismiss"; (f) "not objecting to photos of the victim being used in evidence"; (g) "not calling forth exculpatory witnesses as requested by petitioner"; (h) "not admitting the statement(s) of the petitioner into evidence to support the defense"; (i) "not attacking the witness for interest or bias"; (j) "not objecting to the improper comments made by prosecution"; (k) "not objecting to the sarcastic comments made by prosecution"; (l) "not objecting to the argument[at]ive questioning made by prosecution"; and (m) "not making a motion for a directed verdict on the armed robbery charge."  [App. 607–08.]

3

On July 23, 2008, the PCR court held a hearing regarding Petitioner's PCR application; Laree A. Hensley represented Petitioner.  [App. 619–64.]  At the hearing, Petitioner withdrew his allegations that his trial counsel provided ineffective assistance for not admitting Petitioner's statements into evidence, not objecting to the prosecution's sarcastic comments, and not objecting to the prosecution's argumentative questioning.  [App. 622–23.]  Petitioner also withdrew his allegation that the trial judge abused his discretion in denying Petitioner's motion for a directed verdict on the kidnapping charge.  [App. 622–23.]  Petitioner added an allegation of lack of subject matter jurisdiction on two charges based on the fact that the direct indictments were drawn up before Petitioner was brought to court for a preliminary hearing.  [App. 624–28.]

On September 8, 2008, the PCR court filed an order denying and dismissing with prejudice Petitioner's PCR application.  [App. 666–73.]  Based on the testimony from the PCR hearing, the PCR court found Petitioner's trial counsel was credible while Petitioner was not credible.  [App. 670.]  As to Petitioner's ineffective assistance of counsel claims, the PCR court found that Petitioner failed to meet his burden of proof and that Holmes "demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina."  [App. 672.]  The court found Holmes adequately conferred with Petitioner, conducted a proper investigation, and was thoroughly competent in his representation of Petitioner.  [App. 672.]  Specifically, the PCR court stated that Holmes' strategy with respect to objections and motions was reasonable because the strategy was consistent

4

with the theory of the case advanced by Petitioner.[4]  [App. 671.]  The court also noted that

Holmes's failure to call or cross-examine witnesses was also consistent with the trial

strategy.  [App. 671.]  The court further found that Petitioner failed to meet his burden with

respect to whether Holmes mischaracterized Petitioner's pro se motion to dismiss,

although the court did note that Holmes effectively communicated the motion to the trial

court, and the trial judge indicated that he would not hear any more pro se motions.  [App.

671.]

As to Petitioner's other claims, the PCR court found that Petitioner's jurisdictional

claim was without merit pursuant to *State v. McClure*, 289 S.E.2d 158 (S.C. 1982);

Petitioner's indictments constituted a finding of probable cause, and therefore, a

preliminary hearing was unnecessary.  [App. 671.] Further, the PCR court found there was

no evidence to support Petitioner's claim that the direct indictments were gained by

prosecutorial misconduct.   [App. 671.]   Finally, the PCR court addressed Petitioner's

remaining allegations through a catch-all statement:

> As to any and all allegations that were raised in the application
> or at the hearing in this matter and not specifically addressed
> in this Order, this Court finds [Petitioner] failed to present any
> evidence regarding such allegations. Accordingly, this Court
> finds [Petitioner] waived such allegations and failed to meet his
> burden of proof regarding them. Therefore, they are hereby
> denied and dismissed.

[App. 672.]

Petitioner timely filed a notice of appeal, and Petitioner's counsel filed a *Johnson*

petition for writ of certiorari and a petition to be relieved as Petitioner's counsel.  [Doc. 15-

---

[4] As the PCR court noted, Petitioner did not contest the fact that a murder occurred; Petitioner's defense was duress.  [App. 671.]

13.]  The *Johnson* petition addressed the issue of whether Petitioner's trial counsel was ineffective for failing to move for a change of venue because of pre-trial publicity.  [Doc. 15-13.]  The State submitted a letter in response in lieu of a formal brief.  [Doc. 15-14.] Petitioner filed a pro se response to the *Johnson* petition, which addressed the following issues:

> Was counsel ineffective by failing to make motion to suppress, or objecting to the inadmissible videotape being used as evidence?
>
> Was counsel ineffective by failing to make motion to quash the duplicitous murder indictment?
>
> Was trial counsel ineffective by failing to make motion to quash the two (2) direct indictments?
>
> Was counsel ineffective for changing the wording of the prose motion to dismiss all charges, submitted by the petitioner?
>
> Was counsel ineffective by failing to object to the photos of the victim being used in evidence?
>
> Was trial counsel ineffective by failing to call forth the exculpatory witnesses as requested by the client?
>
> Was counsel ineffective by failing to attack witness for interest or bias?
>
> Was counsel ineffective by failing to object to the improper questioning made by the prosecuto[r]?
>
> Was counsel ineffective by failing to make motion for directed verdict on the armed robbery charge?
>
> Were the direct indictments gained by prosecutorial misconduct?
>
> Did the trial court lack subject matter jurisdiction to tr[y] and sentence petitioner?

6

Was P.C.R. counsel ineffective by not bringing forth all of the petitioner's issues properly before the P.C.R. Court?

[Doc. 15-15 at 2.]  The South Carolina Supreme Court denied certiorari on June 10, 2010 [Doc. 15-16] and issued remittitur on June 29, 2010 [Doc. 15-17].

On September 17, 2010, Petitioner filed this Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner asserts six grounds in support of the Petition: (1) trial counsel was ineffective because he changed the wording of Petitioner's pro se motion to dismiss all charges, (2) trial counsel was ineffective by failing to move to quash the two direct indictments, (3) trial counsel was ineffective by failing to call forth exculpatory witnesses, (4) trial counsel was ineffective by failing to move to quash the duplicitous murder indictment, (5) prosecutorial misconduct, and (6) trial counsel was ineffective by failing to move for a directed verdict on the armed robbery charge.[5]  [Doc. 1.] Respondent filed a motion for summary judgment on December 16, 2010 [Doc. 14], which is now ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under

---

[5] As previously stated, Petitioner submitted a corrected Petition, which was entered on October 18, 2010.  The corrected Petition asserts the same ground as the original Petition but was filed on the current § 2254 form.

7

this less stringent standard, however, the pro se Petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the

8

non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

9

**Habeas Corpus**

> ***Generally***

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

11

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[6] Further, strict time deadlines govern direct appeal and the filing

---

[6]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state

---

at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

14

U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.*

15

at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required

to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However,

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse

a default.  *Murray*, 477 U.S. at 492.  To show actual prejudice, the petitioner must

demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

Under the AEDPA, a federal court may not grant habeas relief unless the underlying

state court decision was contrary to or an unreasonable application of federal law, as

determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme

Court recently recognized, § 2254(d), as amended by AEDPA, "stops short of imposing a

complete bar on federal court relitigation of claims already rejected in state proceedings."

*Harrington*, 131 S. Ct. at 786.  Section 2254(d) imposes a standard that was intended to

be difficult for prisoners to meet because § 2254(d) "reflects the view that habeas corpus

is a 'guard against extreme malfunctions in the state criminal justice systems,' not a

substitute for ordinary error correction through appeal."  *Id.* (quoting *Jackson v. Virginia*,

443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**Respondent's Argument That Ground Five is Procedurally Barred**

Procedural default is an affirmative defense that is waived if not raised by

respondents.  *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996) (stating that if a potentially

defaulted claim is raised in the federal proceedings, the respondent must raise procedural

default as a defense when the claim is raised in the federal proceedings or lose the right

to raise the defense at a later federal proceeding).  If the petitioner does not raise cause

16

and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

Respondent argues that Ground Five, prosecutorial misconduct in seeking direct indictments, is procedurally defaulted because Petitioner did not raise this argument at the appropriate time in state court.  The Court disagrees.

In a late nineteenth century case, the South Carolina Supreme Court explained the importance of an indictment:

> "The indictment is the charge of the state against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation. When that indictment is presented, that accusation made, that pleading filed, the accused has two courses of procedure open to him. He may question the propriety of the accusation, the manner in which it has been presented, the source from which it proceeds, and have these matters promptly and properly determined; or, waiving them, he may put in issue the truth of the accusation, and demand the judgment of his peers on the merits of the charge. If he omits the former, and chooses the latter, he ought not, when defeated on the latter[—]when found guilty of the crime charged[—]to be permitted to go back to the former, and inquire as to the manner and means by which the charge was presented."

*State v. Faile*, 20 S.E. 798, 801 (S.C. 1895) (quoting *Ex parte Wilson*, 140 U.S. 575 (1891)).  Under South Carolina law, any objection to an indictment must be made before the jury is sworn.  S.C. Code Ann. § 17-19-90; *State v. Fonseca*, 681 S.E.2d 1, 3 (S.C. Ct. App. 2009).  For a time, South Carolina law conflated subject matter jurisdiction and the sufficiency of an indictment such that S.C. Code Ann. § 17-19-90 was not strictly applied. *See State v. Gentry*, 610 S.E.2d 494, 498–500 (S.C. 2005).  However, in *Gentry*, the Supreme Court held, "[I]f an indictment is challenged as insufficient or defective, the defendant must raise that issue before the jury is sworn and not afterwards."  *Id.* at 499.

17

In this case, Petitioner did not object to the direct indictments until after the jury returned its verdict and just before the trial judge imposed Petitioner's sentence.  [App. 12–13, 25–31, 574–78; *see also* App. 31–70, 559–60.]  However, Petitioner's objections were based on *prosecutorial misconduct* in procuring the indictments; Petitioner did not object to the *indictments* as being insufficient or defective.  Moreover, Petitioner raised this argument in his PCR application [App. 608], and the State did not object on the ground that Petitioner's argument was untimely—the State "denie[d] the claim of prosecutorial misconduct and demand[ed] strict proof thereof" [App. 616].   In its order dismissing Petitioner's PCR application, the PCR court found there was no evidence to support Petitioner's claim of prosecutorial misconduct, and the court was not persuaded by Petitioner's argument on his claim.   [App. 671.]   Following the PCR court's dismissal, Petitioner raised this prosecutorial misconduct argument in his pro se petition for certiorari. [Doc. 15-15 at 4.]  Therefore, the Court finds that Ground Five is not procedurally barred because Petitioner properly presented this issue to the South Carolina Supreme Court, and the Court will address the merits of Petitioner's argument.

**Ground Five: Prosecutorial Misconduct**

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Supreme Court has observed, "When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them."  *Id.*  In this case, Petitioner has not alleged he was

18

deprived of a right guaranteed by the Bill of Rights, such as the right to counsel or the privilege against compulsory self-incrimination.  *See id.* (citing *Argersinger v. Hamlin*, 407 U.S. 25 (1972); *Griffin v. California*, 380 U.S. 609 (1965)).

The PCR court found that Petitioner failed to produce any evidence of improper conduct by the prosecutor [App. 671], and this Court finds that the PCR court's conclusion is supported by the record.  As to his prosecutorial misconduct claim, Petitioner testified at the PCR hearing as follows:

> [The prosecutor's] procedural error would violate my due process rights by just jumping from [the murder and armed robbery] charges, adding on [the kidnapping and conspiracy] charges later on, because one charge was like eight months after I was locked up and the other one just came out of nowhere with the other two indictments.

[App. 633.][7]   Petitioner nor his PCR counsel added anything further with respect to Petitioner's claim of prosecutorial misconduct.  [*See* App. 621–63.]  Accordingly, the Court

---

[7] A prosecutor's delay prior to a petitioner's indictment may be the basis for a due process challenge; however, the pre-indictment delay must have caused substantial prejudice to the petitioner's right to a fair trial, and the delay must have been an intentional device to gain tactical advantage over the petitioner.  *United States v. Marion*, 404 U.S. 307, 324 (1971).  The Supreme Court has declined to determine what length of delay constitutes actual prejudice requiring dismissal of the charges:

> [W]e need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution.  Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution.  To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case.  It would be unwise at this juncture to attempt to forecast our decision in such cases.

*Id.* at 324–25 (footnotes omitted).  Petitioner has failed to argue any prejudice to his trial that resulted from the alleged misconduct of the prosecutor with respect to a delay in indicting Petitioner on the kidnapping and conspiracy charges.  Therefore, the Court finds that Petitioner has failed to establish a claim for relief based on prosecutorial misconduct in the form of pre-indictment delay.

concludes that the PCR court's dismissal of Petitioner's claim of prosecutorial misconduct was not an unreasonable application of federal law because Petitioner failed to show any misconduct by the prosecutor that made Petitioner's trial so unfair that Petitioner's conviction was a denial of due process.

**Grounds One–Four and Six: Ineffective Assistance of Counsel**

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, "the question is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788. In *Strickland v. Washington*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong of *Strickland*, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong of *Strickland*, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). Upon a review of the record, the Court finds that the PCR

20

court articulated a reasonable finding that Petitioner's trial counsel satisfied the *Strickland* standard, and therefore, the PCR court's decision is not an unreasonable application of federal law.

### Ground One: Changed Wording of Pro Se Motion to Dismiss

The PCR court found that Petitioner's trial counsel was not ineffective with respect to Petitioner's allegation that Holmes changed the wording of Petitioner's pro se motion to dismiss all of Petitioner's charges.  [App. 671.]  The court stated that Holmes effectively communicated the motion to the trial court, but the trial judge indicated that he would not hear any more pro se motions.  [App. 671.]  The PCR court found that Petitioner did not present any evidence to support his claim that Holmes was ineffective because he changed the wording of Petitioner's pro se motion to dismiss.  [App. 671.]  Accordingly, the PCR court found Petitioner failed to meet his burden under *Strickland*.  [App. 671.]

The PCR court's conclusion is supported by the trial transcript and testimony given at the PCR hearing.  Holmes testified, and a review of the trial transcript confirms, that the trial judge did state that he did not want any more pro se motions, but the judge allowed Holmes to argue Petitioner's pro se motion after Holmes explained Petitioner had filed before Holmes was appointed to represent Petitioner.  [App. 652; *see also* App. 25–27.] The Court agrees with the PCR court that Holmes effectively communicated the substance of Petitioner's motion to dismiss to the trial judge; as Petitioner contends, Holmes did use the word "prejudice" and not "perjury," but the substance of Holmes's presentation to the trial judge conveyed the basis of Petitioner's motion.  [App. 26–27.]  The Court finds that the record supports the PCR court's conclusion that Petitioner failed to show the *Strickland*

elements, which are necessary to establish an ineffective assistance of counsel claim. Consequently, the Court recommends that summary judgment be granted as to Ground One.

### Grounds Two–Four and Six: Claims Based on Counsel's Trial Strategy

Petitioner alleges that his trial counsel was ineffective by failing to move to quash the two direct indictments; failing to call forth exculpatory witnesses; failing to move to quash the duplicitous murder indictment; and failing to move for a directed verdict on the armed robbery charge.  [Doc. 1.]  The PCR court found that Petitioner's counsel employed a reasonable trial strategy in making, or not making, objections and motions.  [App. 671.] The court noted Holmes "is a trial practitioner who has extensive experience in the trial of serious offenses such as murder, armed robbery, and kidnapping."  [App. 670.]  The PCR court also found Petitioner's testimony was not credible but Holmes's testimony was credible, which included Holmes's testimony about the defense's trial strategy.  [App. 670.]

As the Supreme Court stated in *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690.  Moreover, the PCR court's conclusion is supported by the record. Holmes testified that he had handled thirty-seven homicide cases.  [App. 649.]  He also testified that he met with Petitioner on numerous occasions to go over the background of the case; review all the discovery materials; and discuss trial strategy, the elements of Petitioner's charges, and Petitioner's version of the facts.  [App. 650–51.]  Further, Holmes testified that Petitioner's defense was duress—Petitioner was an unwilling participant in the offenses; Petitioner was not challenging the fact that a murder occurred.  [App. 651.] Because of Petitioner's defense, Holmes did not raise many challenges to the State's

22

evidence.  [App. 653–56.]  The Court finds the record supports the PCR court's conclusion that Petitioner failed to show his trial counsel provided ineffective assistance for failing to make various motions and call certain witnesses, and the Court recommends that summary judgment be granted as to Grounds Two, Three, Four, and Six.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 29, 2011
Greenville, South Carolina